## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 14-1419 (CRC) |
| v. | ) ) | |
| FEDERAL ELECTION COMMISSION, | ) ) | MOTION TO DISMISS |
| Defendant. | ) ) ) | |

### FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Federal Election

Commission hereby moves for an order dismissing (a) counts three and four of plaintiffs'

complaint in their entirety, and (b) the portions of counts one and two of plaintiffs' complaint

that seek relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, all of which fail to

state a claim upon which relief can be granted.  The Federal Election Campaign Act, 52 U.S.C.

§ 30109(a)(8), provides the exclusive basis for judicial review of the administrative dismissal

decisions that plaintiffs challenge in this action, and that provision limits the scope of review and

relief available here.  A supporting memorandum and a proposed order accompany this motion.[1]

---

[1]    This litigation is commenced against the Federal Election Commission (Commission) on the grounds that the Commission did not approve a recommendation of the Commission's Office of General Counsel (OGC) to find "reason to believe" (RTB) that a violation of the FECA or of its regulations occurred in this case and that the file was consequently closed.  52 U.S.C. § 30109(a)(8) (formerly 2 U.S.C. § 437g(a)(8)).  The reason for the inaction of the Commission is because there were not four or more Commissioners' votes to proceed on the RTB recommendation.  Courts have held that, in order to properly review the inaction of the Commission, the court must be supplied with a "statement of reasons" of those Commissioners who voted against, or abstained from voting for, the OGC recommendation, who the court has called the "controlling group."  *See Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1132 (D.C. Cir. 1987); *FEC v. Nat'l Republican Senatorial Comm.*, 966 F. 2d 1471, 1476 (D.C.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Deputy General Counsel

Kevin Deeley
Acting Associate General Counsel

Erin Chlopak (D.C. Bar No. 496370)
Acting Assistant General Counsel

/s/ Greg J. Mueller
Greg J. Mueller (D.C. Bar No. 462840)
Charles Kitcher (D.C. Bar No. 986226)
Attorneys

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

October 28, 2014

---

Cir. 1992) ("[W]hen the Commission deadlocks 3-3 and so dismisses a complaint, that dismissal, like any other, is judicially reviewable under Section [30109(a)(8)]. . . . [T]o make judicial review a meaningful exercise, the three Commissioners who voted to dismiss must provide a statement of their reasons for so voting.  Since those Commissioners constitute a controlling group for purposes of the decision, their rationale necessarily states the agency's reasons for acting as it did."); *Common Cause v. FEC*, 655 F. Supp. 619 (D.D.C. 1986), *rev'd on other grounds*, 842 F.2d 436 (D.C. Cir. 1988).  The Commission has historically voted by a majority vote (pursuant to 52 U.S.C. §§ 30106(c) and 30107(a)(6) (formerly 2 U.S.C. §§ 437c(c) and 437d(a)(6))) to authorize the OGC's appearance on behalf of the Commission in suits commenced pursuant to 52 U.S.C. 30109(a)(8) (formerly 2 U.S.C. § 437g(a)(8)).  Accordingly, the views of the Commissioners who voted to pursue enforcement are not defended by the OGC, although their statements of reasons are part of the administrative record and available for the Court's consideration.  Furthermore, the OGC's representational role in this matter does not change OGC's recommendation to find RTB or any of the reasons supporting it, which are part of the administrative record.

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ) | |
| CITIZENS FOR RESPONSIBILITY AND ) | |
| ETHICS IN WASHINGTON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civ. No. 14-1419 (CRC) |
| ) | |
| v. ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| FEDERAL ELECTION COMMISSION, ) | MOTION TO DISMISS |
| ) | |
| Defendant. ) | |
| ) | |

**FEDERAL ELECTION COMMISSION'S MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

Lisa Stevenson (D.C. Bar No. 457628)
Deputy General Counsel — Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Erin Chlopak (D.C. Bar No. 496370)
Acting Assistant General Counsel
echlopak@fec.gov

Greg J. Mueller (D.C. Bar No. 462840)
Charles Kitcher (D.C. Bar No. 986226)
Attorneys
gmueller@fec.gov
ckitcher@fec.gov

FEDERAL ELECTION COMMISSION
999 E Street N.W.
Washington, DC 20463
October 28, 2014                         (202) 694-1650

# TABLE OF CONTENTS

Page

BACKGROUND ...................................................................................................2

I.    STATUTORY AND REGULATORY BACKGROUND............................................2

      A.    The FEC and FECA's Administrative Enforcement Process ...........................2

      B.    FECA's Requirements for Political Committees ................................................6

II.   FACTUAL BACKGROUND ...................................................................................8

      A.    The Administrative Proceedings Underlying this Action .................................8

III.  THIS JUDICIAL-REVIEW ACTION ....................................................................9

ARGUMENT .....................................................................................................10

I.    STANDARD OF REVIEW .................................................................................10

II.   JUDICIAL REVIEW UNDER SECTION 30109 IS THE EXCLUSIVE
      PROCEDURE FOR CHALLENGING FEC DISMISSAL DECISIONS ..................10

III.  COUNTS THREE AND FOUR OF PLAINTIFFS' COMPLAINT
      SHOULD BE DISMISSED ..................................................................................14

      A.    Plaintiffs' Claims for Declaratory and Injunctive Relief Regarding
            a Purported "De Facto" Regulation Are Outside Section 30109(a)(8)'s
            Exclusive Scope ....................................................................................................14

      B.    Plaintiffs Are Neither a Proper Nor Timely Challenger to the
            Commission's Dismissal of an Earlier Administrative Complaint ................17

IV.   THE PORTIONS OF COUNTS ONE AND TWO OF PLAINTIFFS'
      COMPLAINT THAT SEEK RELIEF UNDER THE APA SHOULD
      BE DISMISSED .................................................................................................18

CONCLUSION.....................................................................................................19

i

# TABLE OF AUTHORITIES

## *Cases*

*Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052 (D.C. Cir. 2007) .......................................... 18

*Akins v. FEC*, 146 F.3d 1049 (D.C. Cir. 1998).........................................................................5

*Akins v. FEC*, 736 F. Supp. 2d 9 (D.D.C. 2010)......................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).............................................................................8, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................10

*Block v. Community Nutrition Inst.*, 467 U.S. 340 (1984)................................................10, 12

*Bowen v. Massachusetts,* 487 U.S. 879 (1988)........................................................................11

*Buckley v. Valeo*, 424 U.S. 1, (1976) (per curiam) ..............................................................6, 15

*Citizens for Responsibility & Ethics in Washington v. FEC*, 475 F.3d 337
    (D.C. Cir. 2007) ..............................................................................................................4

*Coal River Energy, LLC v. Jewell*, 751 F.3d 659 (D.C. Cir. 2014)........................................12

*Common Cause v. FEC*, 842 F.2d 436 (D.C. Cir. 1988) ...........................................................4

*Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) (per curiam) ....................................17

*Durkin for U.S. Senate Comm. v. FEC*, No. C80-503D, 2 Fed. Election Camp. Fin.
    Guide (CCH) ¶ 9147 (D.N.H. Oct. 30, 1980) ...............................................................13

*FEC v. Akins*, 524 U.S. 11 (1998)..........................................................................................5

*FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27 (1981)....................................4

*FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480 (1985) ........................5, 13

*FEC v. Nat'l Republican Senatorial Comm.*, 966 F. 2d 1471 (D.C. Cir. 1992) .................4, 16

*Free Speech v. FEC*, 720 F.3d 788 (10th Cir. 2013) ................................................................7

*Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009) ...........................................................11, 12

*Jordan v. FEC*, 68 F.3d 518 (D.C. Cir. 1995) .......................................................................18

*Judicial Watch v. FEC*, 293 F. Supp. 2d 41 (D.D.C. 2003)............................................17

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ...................................................18

*Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013) ...........................................10

*La Botz v. FEC*, 889 F. Supp. 2d 51 (D.D.C. 2012) ...................................................5

*National Rifle Ass'n of Am. v. FEC*, 854 F.2d 1330 (D.C. Cir. 1988)....................18

*Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986).........................................................14

*Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996).............................................................13

*Real Truth About Abortion, Inc. v. FEC*, 681 F.3d. 544 (4th Cir. 2012) .................7

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012) .........................10

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ................................................................5

*Shays v. FEC*, 414 F.3d 76 (D.C. Cir. 2005) ...........................................................11

*Shays v. FEC*, 511 F. Supp. 2d 19 (D.D.C. 2007) ...............................................7, 15

*Stockman v. FEC*, 138 F.3d 144 (5th Cir. 1998)...................................................13, 15

**Statutes, Regulations, and Rules**

5 U.S.C. § 704.............................................................................................................11

5 U.S.C. § 706.................................................................................................1, 18, 19

5 U.S.C. § 706(2)(A)....................................................................................................14

26 U.S.C. §§ 527(a)(e)(1) .............................................................................................7

52 U.S.C. § 30109(a)(8) (2 U.S.C. § 437g(a)(8)) ........................................................1

52 U.S.C. § 30101(4) (2 U.S.C. § 431(4))...................................................................8

52 U.S.C. § 30101(4)(A) (2 U.S.C. § 431(4)(A))........................................................6

52 U.S.C. § 30101(8)(A)(i) ( 2 U.S.C. § 431(8)(A)(i)................................................6

52 U.S.C. §§ 30102-30104 (2 U.S.C. §§ 432-434)......................................................8

52 U.S.C. § 30103 (2 U.S.C. § 433) ................................................................6

52 U.S.C. § 30104(a)-(b) (2 U.S.C. § 434(a)-(b)) ..........................................6

52 U.S.C. § 30106 (2 U.S.C. § 437c) ..............................................................2

52 U.S.C. § 30106(b)(1) (2 U.S.C. § 437c(b)(1)) ......................................2, 12

52 U.S.C. § 30106(c) (2 U.S.C. § 437c(c)) ..............................................2, 3, 16

52 U.S.C. § 30107 (2 U.S.C. § 437d) .............................................................16

52 U.S.C. § 30107(a)(6) (2 U.S.C. § 437d(a)(6)) ............................................2

52 U.S.C. § 30107(a)(8) (2 U.S.C. § 437d(a)(8)) ..............................2, 11, 16

52 U.S.C. § 30107(a)(9) (2 U.S.C. § 437d(a)(9)) ............................................2

52 U.S.C. § 30109(a)(1)-(2) (2 U.S.C. § 437g(a)(1)-(2)) .............................2, 3

52 U.S.C. § 30109(a)(4)(A)(i) (2 U.S.C. § 437g(a)(4)(A)(i)) ..........................3

52 U.S.C. §30109(a)(6) (2 U.S.C. §437g(a)(6)) ..............................................2

52 U.S.C. § 30109(a)(6)(A) (2 U.S.C. § 437g(a)(6)(A)) ..................................3

52 U.S.C. § 30109(a)(8) (2 U.S.C. § 437g(a)(8)) ......................4, 9, 13, 14-18

52 U.S.C. § 30109(a)(8)(A) (2 U.S.C. § 437g(a)(8)(A)) ...................................4

52 U.S.C. § 30109(a)(8)(C) (2 U.S.C. § 437g(a)(8)(C)) ............................5, 11

52 U.S.C. § 30109(a)(12) (2 U.S.C. § 437g(a)(12)) .........................................3

52 U.S.C. § 30111(a)(8) (2 U.S.C. § 438(a)(8)) ..............................................2

11 C.F.R. § 100.5(a) .........................................................................................6

11 C.F.R. § 111.4 .............................................................................................3

Fed. R. Civ. P. 12(b)(6) .................................................................................10

*Proposed Rules: Political Committee Status*, 69 Fed. Reg. 11,736
(Mar. 11, 2004) ...........................................................................................7

*Rules and Regulations:  Political Committee Status*, 72 Fed. Reg. 5595 (Feb. 7, 2007) .........7

iv

*Miscellaneous*

House Report, H.R. Rep. No. 917, 94th Cong., 2d Sess. 4 (1976),
    *reprinted in* FEC, *Legislative History of Federal Election Campaign Act
    Amendments of 1976* (GPO 1977) .................................................................12

House Report, H.R. Rep. No. 1057, 94th Cong., 2d Sess. 35 (1976), *1976,
    reprinted in* FEC, *Legislative History of Federal Election Campaign Act
    Amendments of 1976 (GPO 1977)* ..................................................................12, 13

120 Cong. Rec. 18,525 (1974) (remarks of Sen. Cannon),
    *reprinted in* FEC, *Legislative History of Federal Election Campaign
    Amendments of 1974,* (GPO 1977) ................................................................13

*In the Matter of Crossroads Grassroots Policy Strategies*, MUR 6396, Certification
    (Dec. 5, 2013), http://eqs.fec.gov/eqsdocsMUR/14044350869.pdf ..........................18

v

Plaintiffs Citizens for Responsibility and Ethics in Washington and its Executive Director Melanie Sloan challenge the Federal Election Commission's ("Commission" or "FEC") dismissal of two administrative complaints that plaintiffs filed with the Commission alleging certain campaign-finance violations by American Action Network ("AAN") and Americans for Job Security ("AJS").  Plaintiffs' administrative complaints alleged that those two entities violated the Federal Election Campaign Act ("FECA" or "Act") by spending substantial sums of money on advertising referencing federal candidates and legislative issues without registering with the Commission as a "political committee" and complying with the disclosure requirements applicable to political committees.  Two of plaintiffs' claims in this action seek judicial review of the dismissal of those administrative matters pursuant to the narrow judicial-review provision in FECA, 52 U.S.C. § 30109(a)(8) (formerly 2 U.S.C. § 437g(a)(8)).[1]  But plaintiffs also bring claims here for broad relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, including injunctive relief that would preclude the Commission "from relying on" certain legal analyses in determining whether any organization is subject to FECA's registration and reporting requirements for political committees (Compl. Prayer for Relief ¶ 6).  FECA, however, provides the exclusive mechanism for obtaining judicial review of an FEC decision to dismiss an administrative complaint, and limits the scope of relief available to parties seeking such review.  Consequently, the portions of plaintiffs' complaint that rely on the APA and seek relief beyond the scope of FECA's narrow judicial-review provision fail to state a claim and must be dismissed.

---

[1]     Effective September 1, 2014, the provisions of FECA formerly codified in Title 2 of the United States Code were recodified in Title 52.  This submission will indicate in parentheses the former Title 2 citations.

## BACKGROUND

### I.        STATUTORY AND REGULATORY BACKGROUND

#### A.        The FEC and FECA's Administrative Enforcement Process

The FEC is a six-member, independent agency of the United States government with "exclusive jurisdiction" to administer, interpret, and civilly enforce FECA.  *See generally* 52 U.S.C. §§ 30106, 30107 (§§ 437c, 437d).  Congress authorized the Commission to "formulate policy" with respect to FECA, *id.* § 30106(b)(1) (§ 437c(b)(1)); "to make, amend, and repeal such rules . . . as are necessary to carry out the provisions of [FECA]," *id.* §§ 30107(a)(8), 30111(a)(8) (§§ 437d(a)(8), 438(a)(8)); and to investigate possible violations of the Act, *id.* § 30109(a)(1)-(2) (§ 437g(a)(1)-(2)).  The Commission has exclusive jurisdiction to initiate civil enforcement actions for violations of the Act in the United States district courts.  *Id.* §§ 30106(b)(1), 30109(a)(6) (§§ 437c(b)(1), 437g(a)(6)).

FECA provides that decisions of the Commission "with respect to the exercise of its duties and power under the provisions of th[e] Act shall be made by a majority vote of the members of the Commission," and that certain specified actions require "the affirmative vote of 4 members of the Commission."  52 U.S.C. § 30106(c) (§ 437c(c)).  As explained in greater detail below, the decision to open an investigation or take other statutory steps in the process of enforcing against an alleged violation of FECA thus requires the assent of at least four Commissioners.  52 U.S.C. §§ 30106(c), 30107(a)(6), (9) (§§ 437c(c), 437d(a)(6), (9)).  When pursuit of an alleged violation is not supported by four or more votes of the agency's six Commissioners, the statute precludes the opening of an investigation or advancement of the enforcement process.

FECA permits any person to file an administrative complaint with the Commission alleging a violation of the Act. *Id.* § 30109(a)(1) (§ 437g(a)(1)); *see also* 11 C.F.R. § 111.4. After reviewing the complaint and any response filed by the respondent, the Commission considers whether there is "reason to believe" that FECA has been violated. 52 U.S.C. § 30109(a)(2) (§ 437g(a)(2)). Any investigation under this provision is confidential until the administrative process is complete. *Id.* § 30109(a)(12) (§ 437g(a)(12)). If at least four of the FEC's six Commissioners vote to find such reason to believe, the Commission may investigate the alleged violation; otherwise, the Commission dismisses the administrative complaint. *Id.* §§ 30106(c), 30109(a)(2) (§§ 437c(c), 437g(a)(2)).

If the Commission votes to proceed with an investigation, it then must determine whether there is "probable cause" to believe that FECA has been violated. *Id.* § 30109(a)(4)(A)(i) (§ 437g(a)(4)(A)(i)). Like a reason-to-believe determination, a determination to find probable cause to believe that a violation of FECA has occurred requires an affirmative vote of at least four Commissioners. *Id.* §§ 30106(c), 30109(a)(4)(A)(i) (§§ 437c(c), 437g(a)(4)(A)(i)). If the Commission so votes, it is statutorily required to attempt to remedy the violation informally and attempt to reach a conciliation agreement with the respondent. *Id.* Entering into a conciliation agreement requires an affirmative vote of at least four Commissioners and such an agreement, unless violated, operates as a bar to any further action by the Commission related to the violation underlying that agreement. *Id.* If the Commission is unable to reach a conciliation agreement, FECA authorizes the agency to institute a *de novo* civil enforcement action in federal district court. *Id.* § 30109(a)(6)(A) (§ 437g(a)(6)(A)). The institution of a civil action under section 30109(a)(6)(A) requires an affirmative vote of at least four Commissioners. *Id.* § 30106(c) (§ 437c(c)).

If, at any point in the administrative process, the Commission determines that no violation has occurred or decides to dismiss the administrative complaint for some other reason, FECA provides the complainant with a narrow cause of action for judicial review of the Commission's dismissal decision.  *See id.* § 30109(a)(8)(A) (§ 437g(a)(8)(A)) (detailing the procedure for seeking judicial review of an administrative dismissal and the scope of such review).  That limited judicial review of FEC dismissal decisions applies equally to dismissals that result from a 3-3 vote.  *FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992) ("*NRSC*") ("[A split vote] dismissal, like any other, is judicially reviewable under [§ 30109(a)(8) (§ 437g(a)(8))].").  In such cases, judicial review is based on the statement of reasons issued by the Commissioners who voted to dismiss.  *Id.*  "[T]hose Commissioners constitute a controlling group for purposes of the [dismissal] decision," because their "rationale necessarily states the agency's reasons for acting as it did."  *Id.*

By statute, the judicial task in such an action "is limited."  *Common Cause v. FEC*, 842 F.2d 436, 448 (D.C. Cir. 1988) (describing 52 U.S.C. § 30109(a)(8) (§ 437g(a)(8))).  As the Supreme Court has explained, the Commission "has the 'sole discretionary power' to determine in the first instance whether or not a civil violation of the Act has occurred" and "Congress wisely provided that the Commission's dismissal of a complaint should be reversed only if 'contrary to law.'"  *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981); *see Citizens for Responsibility & Ethics in Washington v. FEC*, 475 F.3d 337, 340 (D.C. Cir. 2007) ("[J]udicial review of the Commission's refusal to act on complaints is limited to correcting errors of law.").

FECA also expressly limits the scope of relief available to a plaintiff challenging an FEC dismissal decision.  The reviewing court may only (a) declare that the Commission's dismissal

was "contrary to law" and (b) order the Commission to "conform with" the court's declaration within 30 days.  52 U.S.C. § 30109(a)(8)(C) (§ 437g(a)(8)(C)).  A judicial order to "conform with" a contrary-to-law declaration cannot mandate a different outcome on remand; the Commission remains free to reach the same outcome based on a different rationale.  *FEC v. Akins*, 524 U.S. 11, 25 (1998) (explaining that even where a reviewing court finds that an FEC administrative dismissal was contrary to law, the Commission "(like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason" (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943))); *Akins v. FEC*, 146 F.3d 1049, 1050 (D.C. Cir. 1998) ("A holding that the FEC's decision was invalid would leave the FEC free to reach the same decision on another ground."); *see, e.g.*, *La Botz v. FEC*, 889 F. Supp. 2d 51, 63 n.6 (D.D.C. 2012) (clarifying that a judicial determination that an FEC dismissal of an administrative complaint was contrary to law does not mean "that the FEC is required to reach a different conclusion on remand" and suggesting the "possib[ility]" that "the [dismissal] . . . could have been justified entirely by the FEC's prosecutorial discretion, which is 'considerable'" (citation omitted)).

If a court declares that the Commission's dismissal of an administrative complaint was contrary to law and the Commission fails to conform with such a declaration within 30 days, FECA permits the administrative complainant to bring "a civil action to remedy the violation involved in the original [administrative] complaint."  52 U.S.C. § 30109(a)(8)(C) (§ 437g(a)(8)(C)); *see FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 488 (1985) ("*NCPAC*") (explaining that administrative complainants may bring a civil action directly against the administrative respondents "[i]f, and only if, the FEC failed to obey . . . an order" to conform with a judicial declaration that an administrative dismissal was contrary to law).

B.        **FECA's Requirements for Political Committees**

FECA imposes several different kinds of disclosure obligations that apply depending upon the nature of the organization making the communications and the timing, form, and content of the communications.  As relevant here, FECA provides that certain organizations that qualify as "political committees" must, *inter alia*, register with the Commission, appoint a treasurer, maintain names and addresses of contributors, and file periodic reports disclosing to the public most receipts of $200 or more.  52 U.S.C. §§ 30103, 30104(a)-(b) (§§ 433, 434(a)-(b)).

Under FECA, any "committee, club, association, or other group of persons" that receives more than $1,000 in "contributions" or makes more than $1,000 in "expenditures" in a calendar year is a "political committee."  52 U.S.C. § 30101(4)(A) (§ 431(4)(A)); 11 C.F.R. § 100.5(a). The Act defines "contribution" and "expenditure" to include any payment of money to or by any person "for the purpose of influencing any election for Federal office."  52 U.S.C. § 30101(8)(A)(i), (9)(A)(i) (§ 431(8)(A)(i), (9)(A)(i)).  In *Buckley v. Valeo*, however, the Supreme Court explained that the way FECA defines political-committee status "only in terms of amount of annual 'contributions' and 'expenditures'" might result in an overbroad application by reaching "groups engaged purely in issue discussion."  424 U.S. 1, 79 (1976) (per curiam).  The Court therefore concluded that, in order to "fulfill the purposes of the Act," FECA's political-committee provisions "need only encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate."  *Id.* *Buckley* thus established that an entity that is not controlled by a candidate must register as a political committee only if the group (1) crosses the $1,000 threshold of contributions or expenditures and (2) has as its "major purpose" the nomination or election of federal candidates.

FECA does not require a specific method for determining "major purpose" under *Buckley.* Nor does the Commission have any regulation or policy mandating a particular method for determining an organization's major purpose. In 2004, the Commission considered, but declined to promulgate, a regulatory definition of "political committee" that would have encompassed all political organizations holding tax-exempt status under Section 527 of the Internal Revenue Code. *Proposed Rules: Political Committee Status*, 69 Fed. Reg. 11,736, 11,748-11,749 (Mar. 11, 2004); *see* 26 U.S.C. §§ 527(a), (e)(1). In February 2007, the Commission published in the Federal Register a Supplemental Explanation and Justification further explaining its decision not to promulgate such a regulation. *Rules and Regulations: Political Committee Status*, 72 Fed. Reg. 5595 (Feb. 7, 2007) ("Supplemental E&J"). The Supplemental E&J explained that the Commission would continue its longstanding practice of determining an organization's major purpose through case-by-case adjudication. *See id.* at 5596-97. It further explained that this case-by-case approach involves a fact-specific analysis of an organization's conduct — including by reference to its public statements and spending activity — to evaluate whether the organization's major purpose is the nomination or election of federal candidates. *Id.* at 5601.

The Commission's case-by-case approach to determining political-committee status has been repeatedly upheld. *See Free Speech v. FEC*, 720 F.3d 788, 797-98 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 2288 (2014); *Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 556 (4th Cir. 2012) ("*RTAA*"), *cert. denied*, 133 S. Ct. 841 (2013); *Shays v. FEC*, 511 F. Supp. 2d 19, 29-31 (D.D.C. 2007).

II.     **FACTUAL BACKGROUND**

    A.     **The Administrative Proceedings Underlying this Action**

On March 8, and June 7, 2012, plaintiffs filed administrative complaints with the FEC alleging that AAN and AJS, respectively, had violated FECA.[2]  Plaintiffs alleged that AAN and AJS each met the legal standard to qualify as a "political committee," 52 U.S.C. § 30101(4), (§ 431(4)), and that both had failed to comply with FECA's registration and reporting requirements for groups that satisfy that standard, *see generally* 52 U.S.C. §§ 30102-30104, (§§ 432-434); Compl. ¶¶ 69, 83 (Docket No. 1).  AJS and AAN each responded to plaintiffs' allegations, and each denied that it qualified as a political committee and further denied it had violated FECA.  (Compl. ¶¶ 20, 24.)

The Commission's Office of General Counsel recommended that the Commission find reason to believe that both AAN and AJS were political committees and that each had violated FECA by failing to comply with the statutory registration and reporting requirements for such groups.  (*Id.* ¶¶ 70-77, 84-91.)  The Office of General Counsel further recommended that the Commission authorize an investigation to determine whether there was probable cause to believe that AAN and AJS had violated the Act.  (*Id.* ¶ 70, 84.)

On June 27, 2014, the Commission, by a vote of 3-3, did not find reason to believe that either AAN or AJS had violated FECA's registration and reporting requirements for political committees.  (*Id.* ¶¶ 78, 91.)  Vice Chair Ravel and Commissioners Walther and Weintraub voted to find reason to believe and to authorize an investigation.  (*Id.* ¶¶ 81, 94.)  Chairman Goodman and Commissioners Hunter and Petersen voted against finding reason to believe the Act had been violated.  (*Id.* ¶¶ 79, 92.)  The Commission then voted unanimously to close the file and the

---

[2]      For the purposes of this motion only, the Commission "accept[s] as true" the factual allegations — but not the legal arguments or conclusions — asserted in plaintiffs' complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Commissioners thereafter issued "statements of reasons" explaining their reasons for voting as they did.  (*Id.* ¶¶ 79, 81, 92, 94.)

III.     **THIS JUDICIAL-REVIEW ACTION**

Plaintiffs' complaint challenges the Commission's dismissal of the administrative complaints that plaintiffs filed with the Commission alleging that AAN and AJS had violated FECA's political-committee registration and reporting requirements.  Plaintiffs' complaint seeks declarations that the Commission's dismissal decisions were contrary to law and an order requiring the Commission to conform with such declarations, *i.e.*, relief consistent with the limited scope of 52 U.S.C. § 30109(a)(8).

Plaintiffs also purport to seek relief under the APA.  First, plaintiffs purport to rely on the APA to challenge a single, specific portion of the legal analyses in the statements of reasons issued by Chairman Goodman and Commissioners Hunter and Petersen in the AAN and AJS administrative enforcement matters, and in a third enforcement matter in which plaintiffs did not participate, in which those Commissioners explained their reasons for finding that there was no reason to believe that the administrative respondents were required to comply with FECA's registration and reporting requirements for political committees.  (Compl. ¶¶ 2, 96-98, 111-14, 119-22.)  In particular, plaintiffs claim that the three Commissioners' analyses of whether the respondents in these three enforcement matters had the "major purpose" of nominating or electing federal candidates constituted a "policy and/or de facto regulation" that was "adopted without notice and an opportunity for public comment" and that "is arbitrary, capricious, and abuse of discretion, and contrary to law."  (*Id.* ¶¶ 113, 121.)  Plaintiffs purport to seek declaratory and injunctive relief regarding this aspect of three Commissioners' legal analyses in certain administrative dismissal decisions.  (*Id.* Prayer for Relief ¶¶ 5-6.)

Second, plaintiffs purport to rely on the APA as a separate and independent basis for challenging the Commission's dismissal of their administrative complaints against AAN and AJS.  (Compl. ¶¶ 100-02, 104-06.)

**ARGUMENT**

## I.        STANDARD OF REVIEW

Dismissal of a complaint is appropriate where, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint fails as a matter of law to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim must be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Bell Atl. Corp.*, 550 U.S. at 558.

## II.       JUDICIAL REVIEW UNDER SECTION 30109 IS THE EXCLUSIVE PROCEDURE FOR CHALLENGING FEC DISMISSAL DECISIONS

FECA, 52 U.S.C. § 30109(a)(8), provides the exclusive mechanism for judicial review of any FEC dismissal of an administrative complaint, including the two administrative dismissal decisions challenged here.  This is clear not only from the statute's express language and structure, but also from its legislative history.  *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984) (explaining that a "detailed mechanism for judicial consideration of particular issues at the behest of particular persons" may demonstrate that other forms of judicial review are "impliedly precluded"); *Klayman v. Obama*, 957 F. Supp. 2d 1, 20 (D.D.C. 2013) (considering the express language, structure, objectives, and legislative history of Foreign Intelligence Surveillance Act and concluding that the statute precluded plaintiffs' claim for judicial review pursuant to the APA).

10

In section 30109(a)(8), Congress delineated the scope of judicial review available in an action challenging an FEC dismissal of an administrative complaint.[3]  The statute specifies that (a) the statutory cause of action is available only to a complainant who is "aggrieved by an order of the Commission dismissing a complaint filed by such party," (b) any petition for judicial review of an FEC dismissal must be filed (i) in the United States District Court for the District of Columbia and (ii) "within 60 days after the date of the dismissal," and (c) the available relief is a judicial declaration that "the dismissal of the complaint . . . is contrary to law" and an order "direct[ing] the Commission to conform with such declaration."  52 U.S.C. § 30109(a)(8)(C) (§ 437g(a)(8)(C)).  Section 30109(a)(8) further provides that if the Commission fails to conform to such a declaration, the complainant has a private right of action to remedy the violation alleged in its underlying administrative complaint.  *Id.*

Judicial review of final agency actions under the APA is available only where there is "no other adequate remedy" available.  5 U.S.C. § 704.  As the Supreme Court has recognized, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."  *Bowen v. Massachusetts,* 487 U.S. 879, 903 (1988)).  Thus, the APA "'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.'"  *Id.*(footnote omitted); *see Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citing *Bowen* as recognizing that APA review is precluded "where Congress has otherwise provided a 'special and adequate review procedure'").

---

[3]      By contrast, FECA does not provide a mechanism for judicial review of the FEC's formal rulemaking actions, 52 U.S.C. § 30107(a)(8) (§ 437d(a)(8)), and such rulemaking actions, unlike FEC administrative dismissals, are subject to APA review.  *See, e.g.*, *Shays v. FEC*, 414 F.3d 76, 96 (D.C. Cir. 2005) (reviewing FEC regulations promulgated pursuant to statutory authority).  This case, however, does not involve any rulemaking actions.

FECA's "detailed mechanism for judicial consideration of particular issues at the behest of particular persons" clearly precludes other forms of judicial review, including review under the APA.  *See Block*, 467 U.S. at 349.  Where, as here, Congress has "fashion[ed] . . . an explicit provision for judicial review" of certain agency action and has "limit[ed] the time to raise such a challenge," the Court of Appeals for the D.C. Circuit has found that "it is 'fairly discernible' that Congress intended that particular review provision to be exclusive." *Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 664 (D.C. Cir. 2014); *see Garcia*, 563 F.3d at 523 ("'Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the statutory review provision] and the APA.'").

FECA's legislative history confirms Congress's intent to ensure substantial deference to the expert, bipartisan FEC when it exercises its administrative discretion, and to limit the scope of judicial review of matters within that discretion.  In establishing the Commission's "exclusive jurisdiction with respect to the civil enforcement" of the Act, 52 U.S.C. § 30106(b)(1) (§ 437c(b)(1)), the House Report explained that Congress was using the term "exclusive" in its technical legal sense, to accord the Commission jurisdiction over matters within its special competence to the exclusion of all other tribunals.  *See* H.R. Rep. No. 917, 94th Cong., 2d Sess. 4 (1976), *reprinted in* FEC, *Legislative History of Federal Election Campaign Act Amendments of 1976*, at 804 (GPO 1977) ("*1976 Legis. Hist.*").  The Conference Committee expressly adopted the view of the House Report.  H.R. Rep. No. 1057, 94th Cong., 2d Sess. 35 (1976), *1976 Legis. Hist.* at 1029.

> Together, the requirement of four votes for affirmative action, the broad investigatory powers granted . . . , the conciliation procedure mandated, and the substantial civil remedies provided represent a delicate balance designed to effectively prevent and redress violations, and to winnow out, short of litigation, insubstantial complaints and those matters as to which settlement is both possible and desirable.

*1976 Legis. Hist.* at 804.  Congress carefully created narrow exceptions to the Commission's "exclusive jurisdiction to determine how and when" to enforce the federal campaign finance statutes, indicating it did not intend to leave open other avenues.  *NCPAC*, 470 U.S. at 485-86. "The legislative history of [FECA] confirms that '[t]he delicately balanced scheme of procedures and remedies set out in the Act is intended to be the exclusive means for vindicating the rights and declaring the duties stated therein.'"  *Stockman v. FEC*, 138 F.3d 144, 154 (5th Cir. 1998) (quoting 120 Cong. Rec. 35,314 (1974) (remarks of Rep. Hayes, Conference Committee Chairman)).

Every court that has considered the nature of the judicial-review procedures in section 30109(a)(8), including the Court of Appeals for the D.C. Circuit, has found that those procedures are exclusive.  In fact, the D.C. Circuit described section 30109(a)(8) "as specific a mandate as one can imagine," and accordingly concluded that "the procedures it sets forth — procedures purposely designed to ensure fairness not only to complainants but also to respondents — must be followed before a court may intervene."  *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996). The Court of Appeals for the Fifth Circuit similarly found "substantial evidence that Congress set forth the exclusive means for judicial review under [FECA]" in section 30109(a)(8). *Stockman*, 138 F.3d at 156.  And at least one district court has explicitly concluded that FEC dismissal decisions are not reviewable under the APA because "FECA is Congress' carefully crafted response to a delicate, highly political issue . . . [and] provides a careful blend of administrative and judicial enforcement powers.'"  *Durkin for U.S. Senate Comm. v. FEC*, No. C80-503D, 2 Fed. Election Camp. Fin. Guide (CCH) ¶ 9147, at 51,113-114 (D.N.H. Oct. 30, 1980) (copy attached as Exhibit A).  That court concluded that Congress did not intend for

13

"private parties [to] employ the general review provisions of the APA to precipitate judicial intervention in the FECA enforcement scheme." *Id.* at 51,114.

In sum, section 30109(a)(8) provides the exclusive mechanism for challenging the Commission's dismissal of plaintiffs' administrative complaints and limits the scope of relief available to plaintiffs in this action.  The portions of plaintiffs' complaint that purport to rely on the APA and/or seek relief beyond what is permitted in section 30109(a)(8) thus fail to state a claim and should be dismissed.  Therefore, as explained below, the Court should dismiss (a) counts three and four of plaintiffs' complaint in their entirety, and (b) the portions of counts one and two of plaintiffs' complaint that seek relief under the APA.[4]

## III.   COUNTS THREE AND FOUR OF PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED

### A.   Plaintiffs' Claims for Declaratory and Injunctive Relief Regarding a Purported "De Facto" Regulation Are Outside Section 30109(a)(8)'s Exclusive Scope

Counts three and four of plaintiffs' complaint purport to challenge a particular aspect of the analyses of the three Commissioners who voted not to pursue enforcement of the allegations in plaintiffs' administrative complaints.  Specifically, plaintiffs challenge those Commissioners' approach to applying the Supreme Court's mandate in *Buckley* that FECA's political-committee requirements apply only to organizations whose "major purpose . . . is the nomination or election

---

[4]     In applying the statutory "contrary to law" standard in cases seeking administrative review under section 30109(a)(8), courts often consider whether the challenged FEC decision was "arbitrary or capricious, or an abuse of discretion."  *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986); *see also, e.g.*, *Common Cause v. FEC*, 108 F.3d 413, 415 (D.C. Cir. 1997) (per curiam); *Akins v. FEC*, 736 F. Supp. 2d 9, 16-17 (D.D.C. 2010).  The Commission does not dispute that the same considerations are implicated by review of agency decisions under the APA, 5 U.S.C. § 706(2)(A).  But the fact that the Court's review of the Commission's dismissal decisions under section 30109(a)(8) may entail considerations similar to those required under the APA does not entitle plaintiff to *relief* under the APA here.  On the contrary, as explained *supra* pp. 10-14, such relief is clearly precluded by FECA.

of a candidate." *Buckley*, 424 U.S. at 79; *see* Compl. ¶¶ 80, 93, 112, 120.  Plaintiffs prefer a broader approach to evaluating an organization's major purpose, and favorably cite the analysis described in the statement of reasons issued by the other three members of the Commission "who voted to find reason to believe and to authorize further investigation."  (Compl. ¶¶ 81, 94.)

The fact that counts three and four of plaintiffs' complaint selectively focus on a particular *aspect* of the dismissal decisions that plaintiffs challenge neither negates the exclusive nature of judicial review under section 30109(a)(8), nor entitles plaintiffs to relief beyond the scope of what section 30109(a)(8) permits.  In determining whether the Commission's dismissals of plaintiffs' administrative complaints were contrary to law, the Court will necessarily evaluate *all* of the legal analyses of the three Commissioners who voted not to find reason to believe any violations had occurred, including those Commissioners' application of *Buckley*'s "major purpose" requirement.  Thus, the standards developed and applied by the Commission through its case-by-case adjudications are reviewable in the context of section 30109(a)(8) cases.  *See, e.g.*, *Shays v. FEC*, 511 F. Supp. 2d 19, 29-31 (D.D.C. 2007).  But such standards are not reviewable as "de facto" regulatory challenges, and plaintiffs are not entitled to an order enjoining the Commission (or any of its members) from "relying on" certain legal analyses in explaining their rationales in particular administrative enforcement matters.  Nor are plaintiffs entitled to any other relief under the APA.  "Since [FECA] creates a public cause of action for the enforcement of its provisions and a private cause of action only under limited circumstances, the maxim *expressio unius est exclusio alterius* would clearly compel the conclusion that the remedies created in the Act are the exclusive means to enforce the duties and obligations imposed by the Act."  *Stockman*, 138 F.3d at 153-54 (citations and brackets omitted).

15

Plaintiffs' attempt to avoid the narrow scope of section 30109(a)(8) by mischaracterizing (Compl. ¶¶ 113, 122) the particular legal analyses with which they disagree as a Commission "policy and/or de facto regulation" is fatally flawed. A statement of *three* Commissioners explaining their rationale for voting not to pursue an investigation or other enforcement action in a particular administrative enforcement matter does not — and by statute cannot — establish any policy or regulation on behalf of the Commission. Because FECA requires that any affirmative Commission action to investigate or formally advance enforcement against alleged violations be approved by a vote of at least four Commissioners, 52 U.S.C. §§ 30106(c), 30107(a) (§§ 437c(c), 437d(a)), a group of three Commissioners is "controlling" for purposes of judicial review of a decision *not* to pursue such investigative or enforcement actions. *NRSC*, 966 F.2d at 1476. But three Commissioners cannot establish any policy or regulation on behalf of the agency. 52 U.S.C. §§ 30106(c), 30107(a)(8) (§§ 437c(c), 437d(a)(8)); *see supra* p. 2-5. Plaintiffs appear to acknowledge this fact by relying on the alternative analysis described in the statement of reasons issued by the other three Commissioners. (Compl. ¶¶ 81, 94.) Split votes of the Commission regarding whether certain organizations had as their major purpose the nomination or election of federal candidates do not establish an affirmative FEC policy or generally applicable regulation. Plaintiffs' allegations (Compl. ¶¶ 113, 121) about a lack of prior "notice and an opportunity for public comment" regarding the Commissioners' explanatory statements issued in specific administrative enforcement matters are thus clearly misplaced. Counts three and four of plaintiffs' complaint fail to state a claim for relief because the relief plaintiffs seek is outside the scope of section 30109(a)(8).

**B.      Plaintiffs Are Neither Proper Nor Timely Challengers to the Commission's Dismissal of an Earlier Administrative Complaint**

Counts three and four of plaintiffs' complaint also purport to challenge a particular aspect of the analysis of three Commissioners who voted not to pursue enforcement of the allegations against another administrative respondent, Crossroads Grassroots Policy Strategies ("Crossroads"), in an earlier administrative enforcement matter *in which neither of the plaintiffs here participated*.  (Compl. ¶¶ 96-98, 111, 119; *see id.* ¶ 98 (listing administrative complainants in the Crossroads matter, which do not include either of the plaintiffs here).)  Plaintiffs' attempt to challenge one aspect of the analysis of three Commissioners in the Crossroads administrative enforcement matter by mischaracterizing (Compl. ¶¶ 113, 122) that analysis as a "policy and/or de facto regulation" is fatally flawed for all of the reasons described above.

In addition, plaintiffs here plainly lack a cause of action or standing to seek review of the Commission's dismissal of the administrative complaint filed by other parties in the Crossroads matter.  52 U.S.C. § 30109(a)(8) (§ 437g(a)(8) (permitting only a party "aggrieved by an order of the Commission dismissing a complaint *filed by such party*" to seek judicial review of an FEC dismissal decision (emphasis added)); *see Common Cause*, 108 F.3d at 419 (explaining that to establish standing under section 30109(a)(8) (§ 437g(a)(8)), a plaintiff must show a "legally cognizable injury as a result of the FEC's dismissal of *its* complaint" (emphasis added)); *Judicial Watch v. FEC*, 293 F. Supp. 2d 41, 45 (D.D.C. 2003) ("[T]he plain language of [section 30109(a)(8)] makes clear that [judicial review] is only available to parties to the administrative complaint.").

Any attempt to seek judicial review of the Commission's dismissal of the administrative complaint in the Crossroads matter at this point is also untimely.  52 U.S.C. § 30109(a)(8)(B) (§ 437g(a)(8)(B) (requiring that any petition for review of an FEC dismissal of an administrative

17

complaint "shall be filed . . . within 60 days after the date of the dismissal").  The 60-day limit is

a jurisdictional bar that is "unalterable."  *National Rifle Ass'n of Am. v. FEC*, 854 F.2d 1330,

1334 (D.C. Cir. 1988); *accord Jordan v. FEC*, 68 F.3d 518, 518-19 (D.C. Cir. 1995).  As the

public record reflects, the Commission dismissed the administrative complaint against

Crossroads on December 3, 2013.  *See In the Matter of Crossroads Grassroots Policy Strategies*,

MUR 6396, Certification (Dec. 5, 2013), http://eqs.fec.gov/eqsdocsMUR/14044350869.pdf;

Complaint, *Public Citizen v. FEC*, No. 14-0148 (RJL) (D.D.C. Jan. 31, 2014) (Docket No. 1)

(action by administrative respondents in Crossroads matter for judicial review of FEC's

dismissal decision pursuant to 52 U.S.C. § 30109(a)(8) (§ 437g(a)(8))).[5]  Plaintiffs filed their

complaint in this case on August 20, 2014 — more than eight months later.

## IV.   THE PORTIONS OF COUNTS ONE AND TWO OF PLAINTIFFS' COMPLAINT THAT SEEK RELIEF UNDER THE APA SHOULD BE DISMISSED

Counts one and two of plaintiffs' complaint properly invoke section 30109(a)(8) and

appear to seek relief consistent with the narrow scope of that judicial-review provision.

Plaintiffs also, however, purport to rely on the APA, 5 U.S.C. § 706, in seeking declaratory relief

regarding the Commission's administrative dismissal decisions.  (Compl. ¶¶ 100-01, 104-05.)

To the extent counts one and two of plaintiffs' complaint seek relief under the APA, 5 U.S.C.

§ 706, such APA claims must be dismissed for the reasons explained above.

### CONCLUSION

For all the foregoing reasons, the Court should dismiss (a) counts three and four of

plaintiffs' complaint in their entirety, and (b) the portions of counts one and two of plaintiffs'

---

[5]      It is well settled that "public records [are] subject to judicial notice on a motion to dismiss."  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).

complaint that seek relief pursuant to the APA, 5 U.S.C. § 706, all of which fail to state a claim

on which relief can be granted.

                                                                     Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Deputy General Counsel

Kevin Deeley
Acting Associate General Counsel

Erin Chlopak (D.C. Bar No. 496370)
Acting Assistant General Counsel

/s/ Greg J. Mueller
Greg J. Mueller (D.C. Bar No. 462840)
Charles Kitcher (D.C. Bar No. 986226)
Attorneys

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
October 28, 2014                  (202) 694-1650