**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, et al.,**<br><br>Plaintiff,<br><br>v.<br><br>**FEDERAL ELECTION COMMISSION,**<br><br>Defendant. | Case No. 1:14-cv-01419 (CRC) |

**MEMORANDUM OPINION**

The Federal Election Campaign Act ("FECA") regulates the financing of federal election campaigns. Congress has vested the Federal Election Commission ("FEC") with exclusive jurisdiction over civil enforcement of FECA. 52 U.S.C. § 30106(b)(1). If a person or organization believes that a violation of campaign finance laws has taken place, they can file a complaint with the FEC asking the Commission to investigate. And if four of the six FEC Commissioners find that there is "reason to believe" that a violation has occurred, the Commission can investigate. 52 U.S.C. § 30109(a)(2).

The Commission, which is made up of three Democratic Commissioners and three Republican Commissioners, has deadlocked on 3-to-3 votes more than 200 times in the six years preceding this lawsuit. See Nicholas Confessore, Election Panel Enacts Policies by Not Acting, N.Y. Times, Aug. 25, 2014, http://www.nytimes.com/2014/08/26/us/politics/election-panel-enacts-policies-by-not-acting.html. Because four affirmative votes are needed for the FEC to take an enforcement action or issue an advisory opinion, these repeated ties have prevented the FEC from interceding in numerous campaign finance disputes in recent years, even those where the FEC's General Counsel has recommended investigations. This is one such case.

In 2012, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed complaints with the FEC alleging that two organizations—the American Action Network ("AAN") and Americans for Job Security ("AJS")—had violated FECA by failing to register as political committees. Three of the FEC Commissioners voted not to pursue these alleged violations, resulting in the Commission's refraining from taking any enforcement action. The FEC's lack of action on these complaints and others like them has become predictable. This predictability in turn has led some FEC watchers to posit that "de facto rules" exist governing how the FEC interprets the law and when it will take action. Id.

Picking up on this critique, CREW points to the reasons provided by the FEC Commissioners who opposed taking action on its administrative complaints and labels these Commissioners' interpretation of the law a "de facto regulation." Compl. ¶ 2. CREW's claim is that this "de facto regulation" was promulgated in violation of the Administrative Procedure Act ("APA"), which, among other things, prescribes procedures for administrative agencies engaged in rulemaking. The two decisions CREW identifies, however, are ordinary adjudications. Even if these adjudications resulted in the announcement of a new principle or interpretation, that principle or interpretation would not be a regulation within the meaning of the APA and would therefore not be subject to notice-and-comment procedures. Moreover, CREW has an adequate, alternative means to challenge the decisions through FECA's judicial review provision, which precludes APA review. The Court will therefore grant the FEC's partial Motion to Dismiss CREW's claims to the extent that they rely on the APA.

**I.     Background**

   A.     <u>Factual Background</u>

Before the federal elections of 2010, AAN and AJS spent hundreds of thousands of dollars on advertisements. According to the factual allegations in Plaintiffs' Complaint, which the Court accepts as true for the purposes of this motion, the groups spent heavily on advertisements attacking or promoting federal candidates. For instance, one ad claimed that a candidate "supported massive tax hikes," Compl. ¶ 49, and another accused a candidate of exporting jobs to India, <u>id.</u> ¶ 58. Other ads told voters, four days before the special election for U.S. Senate in Massachusetts, to "call [candidate] Scott Brown and tell him you agree Washington should listen to us," <u>id.</u> ¶ 57, and stated in relation to a U.S. Senate primary candidate in Colorado, "Washington is a cesspool . . . . Not Ken Buck," <u>id.</u> ¶ 60.

CREW filed administrative complaints with the FEC against each organization. <u>Id.</u> ¶¶ 69, 83. It alleged that the organizations' advertisements and related activities demonstrated that they were unregistered political committees. The FEC's Office of General Counsel agreed that there was reason to believe that the organizations had violated FECA and recommended investigating further. <u>Id.</u> ¶¶ 70, 84. Three Commissioners, however, voted against this recommendation, and the FEC dismissed the complaints. <u>Id.</u> ¶¶ 78, 91.

CREW then brought a four-count complaint in this Court. Counts One and Two request declaratory judgments that the FEC's dismissals of CREW's respective administrative complaints against AAN and AJS were arbitrary, capricious, and contrary to law under both FECA and the APA.[1] Counts Three and Four request a declaratory judgment and injunctive

---

[1] CREW has abandoned its claims in Counts One and Two to the extent that they rely on the APA. Pls.' Opp'n Mot. Dismiss at 14 n.7.

relief, under the APA only, on the grounds that the FEC promulgated a *de facto* regulation defining "political committee" without notice and comment.  The FEC has moved to partially dismiss Counts One and Two to the extent that they rely on the APA, and Counts Three and Four in their entirety.  The Court held a hearing on April 20, 2015.

      B.      <u>Relevant Statutory Framework</u>

            1.      <u>Political Committee Requirements</u>

The merits of CREW's complaint center on the FEC's interpretation of what makes an organization a "political committee" subject to FECA obligations.  FECA provides that "any committee, club, association, or other group of persons" that receives more than $1,000 in "contributions"—either "for the purpose of influencing any election for Federal office," or "rendered to a political committee without charge for any purpose"—or that makes more than $1,000 in "expenditures" for "the purpose of influencing any election for Federal office" during a calendar year constitutes a "political committee."  52 U.S.C. § 30101(4)(A), (8)(A), (9)(A).[2]  An organization that qualifies as a political committee must register with the FEC, maintain certain information about contributors, and file public reports, among other things.  52 U.S.C. §§ 30103–30104.  The Supreme Court in <u>Buckley v. Valeo</u> narrowed the definition of "political committee" in order to avoid vagueness concerns.  424 U.S. 1, 79 (1976) (per curiam).  It held that the term encompassed only two kinds of organizations: those "that are under the control of a candidate" and those "the major purpose of which is the nomination or election of a candidate."  <u>Id.</u>

---

[2]  FECA, previously codified at 2 U.S.C § 437g <u>et seq</u>. was recently retitled to 52 U.S.C. § 30101 <u>et seq</u>.

4

In order to implement the Supreme Court's definition of "political committee," the FEC considered adopting a rule defining "major purpose." Political Committee Status, 69 Fed. Reg. 11,736, 11,745 (Mar. 11, 2004). After evaluating the public response to this proposal, it decided not to adopt such a rule, opting instead to determine whether an organization is a political committee on a case-by-case basis. Shays v. FEC, 424 F. Supp. 2d 100, 108 (D.D.C. 2006) ("Shays I"). When Members of Congress sued to challenge the FEC's decision not to define "major purpose" through rulemaking, the district court remanded the matter to the FEC for further explanation of why adjudication was appropriate for determining whether a group constituted a "political committee." Id. at 115–16. The agency then issued a public notice that reiterated and explained its decision not to promulgate a regulation, but included indicators for determining a group's "major purpose." Political Committee Status, 72 Fed. Reg. 5,595, 5,601 (Feb. 7, 2007) (Supplemental Explanation and Justification ("SE&J")). When the case returned to the district court, the FEC contended that it needed flexibility in applying the Buckley categories, as "no articulable rule" regarding an organization's major purpose "would reach the correct result in all cases." Shays v. FEC, 511 F. Supp. 2d 19, 30 (D.D.C. 2007) ("Shays II"). Agreeing that assessing an organization's major purpose required "a very close examination of various activities and statements," the district court deferred to the FEC and approved the Commission's case-by-case approach. Id. at 31.

      2.      Judicial Review

Any person or organization who believes that FECA has been violated may file a sworn complaint with the FEC. 52 U.S.C. § 30109(a)(1). Based on the complaint and any recommendation from the FEC's Office of General Counsel, the six Commissioners vote on whether there is "reason to believe that a person has committed, or is about to commit," a

violation of FECA.  Id. § 30109(a)(2).  Four votes are required to move forward, so three votes may block any investigation or enforcement.  Id. § 30109(a)(2), (4).  The Commission is structurally bipartisan:  Of the six members, no more than three may be from the same political party.  Id. § 30106(a)(1).

If four members vote to find "reason to believe" that a violation occurred or is about to occur, the FEC carries out an investigation.  And after that investigation, if four Commissioners find "probable cause to believe" that a violation occurred, the General Counsel attempts to arrive at an agreement with the party accused of committing a violation.  This agreement typically involves an admission of violations, a plan for remedial action to correct any violations, and a provision for the payment of civil penalties.  If the General Counsel is unable to obtain an agreement, the FEC has the option of filing suit in federal district court to seek compliance and the imposition of penalties.  Id. § 30109(a)(4), (5).

If three or more Commissioners vote against moving forward at any stage, this controlling group of Commissioners must provide a statement of their reasons for that decision. See Democratic Congressional Campaign Comm. v. FEC, 831 F.2d 1131, 1135 (D.C. Cir. 1987) (remanding to the agency because the court could not determine why the Commissioners had rejected the General Counsel's recommendation).  Armed with this statement of reasons, "[a]ny party aggrieved" by the decision on its complaint may file a petition in this Court.  52 U.S.C. § 30109(a)(8). The Court then reviews the rationale of the Commissioners who voted against taking further action.  See FEC v. Nat'l Republican Senatorial Comm., 966 F.2d 1471, 1476 (D.C. Cir. 1992) ("Since those Commissioners constitute a controlling group for purposes of the decision, their rationale necessarily states the agency's reasons for acting as it did.").  If the

Court finds the statement of reasons to be contrary to law, it can direct the FEC to take action that "conform[s] with" the Court's finding.  52 U.S.C. § 30109(a)(8)(C).

**II.     Analysis**

CREW contends that the approach of three FEC Commissioners to labeling groups as "political committees" amounts to a regulation that is subject to the APA's notice-and-comment requirements.  At most, however, the Commissioners' interpretation of the "major purpose" test may constitute a new principle that the FEC has announced in adjudication; it does not constitute a regulation under the APA.  Rather than attempt to challenge a nonexistent regulation, CREW's recourse is to seek a declaration under FECA that specific FEC enforcement decisions are contrary to law.  Because FECA provides the exclusive avenue of judicial review for parties seeking to challenge FEC enforcement decisions, CREW may not challenge these decisions under the APA.

A.     *De Facto* Rulemaking

CREW claims that the repeated and consistent application of several Commissioners' interpretation of the "major purpose" test has created what it labels a "de facto regulation." Compl. ¶ 2.  And that regulation, it contends, was promulgated in violation of the APA's notice-and-comment requirements.  5 U.S.C. § 553(b).

The FEC counters that three Commissioners do not have the authority to create an FEC regulation by means of their controlling statements because the Commission may make or amend rules only by majority vote of four members.  52 U.S.C. §§ 30106(c), 30107(a)(8).  While this statement may be accurate, it does not paint a complete picture.  A controlling group of three Commissioners opposing an enforcement action may still speak for the FEC, because their rationale "necessarily states the *agency's* reasons for acting as it did." Nat'l Republican

Senatorial Comm., 966 F.2d at 1476 (emphasis added).  CREW's claim, then, is that the controlling group's view of what constitutes a "major purpose" necessarily represents the FEC's definition of the term.  But even if CREW is correct that the controlling group's view has become a "broader policy" of the FEC as a whole, Pls.' Opp'n Mot. Dismiss at 3, the fact remains that the FEC has announced any such policy only through adjudication.

Crucially, announcing policies or principles in adjudication does not necessarily run afoul of the APA.  Agencies have broad discretion to choose between rulemaking and adjudication to carry out their statutory mandate.  NLRB v. Bell Aerospace Co. Div. of Textron, Inc., 416 U.S. 267, 293 (1974) ("'[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.'" (quoting SEC v. Chenery Corp., 332 U.S. 194, 203 (1947))); see also Shays II, 511 F. Supp. 2d at 31 ("Even if the Court believes as a matter of policy that rulemaking is viable for the major purpose test, the Court may not substitute [its] judgment for the agency's decision.").

And once an agency chooses adjudication, it is "not precluded from announcing new principles" in those proceedings.  Bell Aerospace, 416 U.S. at 294; accord British Caledonian Airways, Ltd. v. Civil Aeronautics Bd., 584 F.2d 982, 994 (D.C. Cir. 1978) (holding that an agency may "announce its policies through adjudications rather than rules").  Indeed, Bell Aerospace "involved a ruling contrary to [an] agency's past decisions . . . ." Chisholm v. FCC, 538 F.2d 349, 364–65 (D.C. Cir. 1976).  If an agency appropriately exercises this choice and announces a new principle in an adjudication, no court has ever held that the resulting order or the rationale underlying it should be treated as a regulation for purposes of judicial review.

In fact, the D.C. Circuit recently rejected that possibility.  In Conference Group, LLC v. FCC, 720 F.3d 957, 964 (D.C. Cir. 2013), it examined a claim that a new substantive rule

8

announced in an adjudication violated the APA's notice-and-comment requirements.  Like the FEC, the Federal Communications Commission ("FCC") proceeded by "a highly fact-specific, case-by-case style of adjudication."  <u>Id.</u> at 965.  In one adjudication the agency revised a definition of "audio bridging" teleconferencing services in a way that the third-party plaintiff argued would hurt its business.  <u>Id.</u> at 964.  The plaintiff argued that the "precedential effect" of the FCC's statutory interpretation "transmutes [an] adjudication into a rulemaking."  <u>Id.</u> at 965.  The D.C. Circuit disagreed, holding that "[t]he fact that an order rendered in an adjudication 'may affect agency policy and have general prospective application' does not make it rulemaking subject to APA section 553 notice and comment."  <u>Id.</u> at 966 (citation omitted) (quoting <u>N.Y. State Comm'n on Cable Television v. FCC</u>, 749 F.2d 804, 814 (D.C. Cir. 1984)).  The Court reasoned that an agency has "very broad discretion to decide whether to proceed by adjudication or rulemaking."  <u>Id.</u> at 965.  And if an agency chooses adjudication, it is in the nature of those proceedings that new principles may be announced and non-parties may be affected by the precedent created.  <u>Id.</u>  A new interpretation is not enough, the Court held, for the APA's notice-and-comment requirements to apply to adjudication.  <u>Id.</u> at 966.  The same holds true here.

      B.     <u>Exclusive Avenue of Review</u>

Having determined that the principles reflected in the controlling group's statements of reasons are not Commission rules within the meaning of the APA's notice-and-comment provision, the question remains whether CREW may nonetheless attack the statements of reasons under the APA.  APA review is not available when Congress has created another specific, "adequate remedy."  5 U.S.C. § 704.  "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."  <u>Bowen v. Massachusetts</u>,

487 U.S. 879, 903 (1988).  An alternative to the APA need only be adequate, not identical.  See Garcia v. Vilsack, 563 F.3d 519, 522 (D.C. Cir. 2009).

FECA itself indicates that the remedy it provides is sufficient to preclude APA review of the Commissioners' statements of reasons.  As discussed previously, FECA grants the FEC "exclusive jurisdiction" over civil enforcement of campaign finance laws, thereby channeling all complaints of campaign finance violations through the FEC.  52 U.S.C. § 30106(b).  Similarly, FECA funnels all challenges to the FEC's handling of complaints through the U.S. District Court for the District of Columbia.  Id. § 30109(a)(8)(A).  Under the system of judicial review established by FECA, the Court can override the FEC's decision to dismiss a complaint if "the dismissal was based on an 'impermissible interpretation of [FECA] . . . or was arbitrary or capricious, or an abuse of discretion.'"  Common Cause v. FEC, 108 F.3d 413, 415 (D.C. Cir. 1997) (quoting Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986)).

This alternative, comprehensive judicial review provision precludes review of FEC enforcement decisions under the APA.  Because FECA includes a private cause of action, along with "a detailed mechanism for judicial consideration of particular issues at the behest of particular persons," that remedy is the exclusive means to enforce the Act.  Stockman v. FEC, 138 F.3d 144, 154 (5th Cir. 1998) (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349 (1984)) (dismissing an action to enjoin an FEC investigation based on lack of subject matter jurisdiction); see also Perot v. FEC, 97 F.3d 553, 559 (D.C. Cir. 1996) (precluding judicial review of FEC action other than through the procedures set forth in FECA).  FECA's legislative history only confirms that Congress meant for the Act's "delicately balanced scheme of procedures and remedies" to be "the exclusive means for vindicating the rights and declaring the

duties stated" in the Act.  Stockman, 138 F.3d at 154 (quoting 120 Cong. Rec. 35,314 (1974) (remarks of Congressman Hayes, Chairman of the Committee reporting the bill)).

CREW argues that FECA's judicial review procedures are inadequate notwithstanding Congress's clear intention to make them the exclusive means of challenging an adverse enforcement decision by the FEC.  The procedures are deficient in CREW's view because, first, the FEC is required to engage in "conciliation" with a respondent to a complaint even if a court rejects the controlling Commissioners' statement of reasons; and, second, the three Commissioners could end the investigation at a later stage by offering a different rationale from that rejected by the court.  But these are simply aspects of the scheme of procedures and remedies that Congress created to enable judicial review of FEC decisions.  They do not render that review inadequate to vindicate CREW's interests.

CREW does claim that it is raising "an across-the-board challenge to how the FEC approaches the 'major purpose' issue," as opposed to simply challenging "particular dismissal decision[s]."  Pls.' Opp'n Mot. Dismiss at 17.  Nevertheless, the crux of CREW's complaint is that the FEC dismissed its earlier administrative complaints under a faulty and misguided rationale.  Like any party aggrieved by FEC enforcement decisions, CREW may of course claim that the basis on which the FEC reached its decisions was arbitrary or unsound.  But also like any aggrieved party, CREW's exclusive remedy for its disagreement with the FEC's rationale is to challenge those particular decisions under the judicial review provision of FECA.

### III.  Conclusion

For the foregoing reasons the Court will dismiss Counts Three and Four in their entirety, and dismiss Counts One and Two to the extent that they rely on the APA. An appropriate order will accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 13, 2015